## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PATRICIA D. HILL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:06-CV-2414-AJB** |
| | : | |
| **MICHAEL J. ASTRUE,**[1] | : | |
| ***Commissioner of Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER AND OPINION[2]

Plaintiff Patricia Hill ("Plaintiff") brought this action pursuant to § 1631(c)(3)

of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final

decision of the Commissioner of the Social Security Administration ("the

Commissioner") denying her application for Supplemental Security Income benefits

---

[1]    Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is "automatically substituted" as Defendant. FED. R. CIV. P. 25(d)(1).

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [*See* Doc. 13; Dkt. Entry dated Mar. 12, 2007]. Therefore, this Order constitutes a final Order of the Court.

("SSI") under the Social Security Act ("the Act").[3]  For the reasons stated below, the undersigned **REVERSES** the Commissioner's denial of benefits and **REMANDS** the case for the Commissioner to act in accordance with this opinion.  The Commissioner has filed an unopposed motion to exceed the page limit of his response brief, [Doc. 16-2], and an unopposed motion to file supplemental authority, [Doc. 20].  Plaintiff also files an unopposed motion for leave to file supplemental authority.  [Doc. 21].  The Court **GRANTS** the Commissioner's motions to exceed the page limit and to supplement authority and **GRANTS** Plaintiff's motion for leave to file supplemental authority.[4]

---

[3]        Title II of the Social Security Act provides for federal disability insurance benefits ("DIB").  42 U.S.C. § 401 *et seq*.  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for SSI for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and regulations governing the determination of disability under a claim for SSI benefits are nearly identical to those governing the determination under a claim for DIB.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI benefits.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI benefits.  However, different statutes and regulations apply to each type of claim.  Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims.

[4]        Plaintiff has not responded to the Commissioner's motions to exceed the page limit for his brief or to file supplemental authority, and the Commissioner has not

AO 72A
(Rev.8/8
2)

## I.     PROCEDURAL HISTORY

Plaintiff originally applied for SSI on February 22, 2000, alleging disability commencing on July 20, 1999. [*See* Record (hereinafter "R") R32-34]. On August 25, 2000, the Commissioner denied Plaintiff's application for benefits.   [R25-28]. Although Plaintiff sought reconsideration, Plaintiff's request for reconsideration was untimely, so the Commissioner did not consider the request. [R29-30].  Plaintiff filed a second application for SSI on April 24, 2001, alleging disability commencing on July 20, 1999. [R127-30].  The Commissioner denied the second application on December 7, 2001.   [R120-23].   There is no evidence in the record that Plaintiff sought reconsideration of the December 7 denial of her April 2001 application. [*See* R119-227].

Plaintiff filed her third and current application for SSI on September 20, 2002, with a protective filing date of September 19, 2002, alleging disability commencing on July 20, 1999.  [R17, 242-45].  Plaintiff's application was denied initially and on reconsideration.  [*See* R228-32, 234-36].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R237].  An evidentiary hearing was held on

───────────────────

responded to Plaintiff's unopposed motion. [*See* Dkt.].  As a result, the Court considers the these motions unopposed.  N.D. Ga. L.R. 7.1B.

3

August 4, 2005.  [R430-58].  The ALJ issued a decision on January 26, 2006, denying Plaintiff's claims on the grounds that Plaintiff's medically determinable impairments did not prevent her from performing her past relevant work.  [R14-22].  Plaintiff then sought review by the Appeals Council and on February 9, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  [R4-10].

Plaintiff then filed an action in this Court on September 7, 2006, seeking review of the Commissioner's decision.  *Patricia D. Hill v. Joanne B. Barnhart,* Civil Action File No. 1:06-CV-02414.  [Doc. 2].  The Commissioner filed an answer on February 28, 2007, and the transcript on March 1, 2007.  [Docs. 9-10].  The matter is now before the Court upon the administrative record and the parties' pleadings, briefs, and oral argument, and is ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    *Determining the Relevant Evidence*

The Commissioner complains that Plaintiff has relied on evidence that is inapplicable to Plaintiff's September 20, 2002, application for SSI.  The Commissioner explains that an individual cannot receive SSI for any month prior to the application for benefits.  As a result, the Commissioner argues that the relevant time period is

4

September 2002 and thereafter, [Doc. 16 at 15], so the evidence prior to this period is irrelevant to Plaintiff's most recent SSI claim, [*id.* at 20-21].[5]

In a supplemental brief, the Commissioner argues that ALJ was not under an affirmative duty to reopen prior disability determinations under the Commissioner's internal policy (chapter I-2-9-1 of the Hearings, Appeals and Litigation Law Manual ("HALLEX")) because: (1) his unfavorable determination did not require him to discuss reopening; and (2) the ALJ did not inform claimant in the notice of hearing that reopening was an issue to be decided. [Doc. 20 at 2-3]. The Commissioner also argues that reopening is not appropriate because too much time had elapsed between the ALJ's August 4, 2005, hearing and the Commissioner's prior no-disability determinations. [*Id.* at 3-4]. Finally, the Commissioner argues that this Court does not have jurisdiction to consider the Commissioner's decision to refuse to reopen a claim. [*Id.* at 4-5].

Plaintiff argues in her supplemental brief that she made an explicit request for reopening the prior determinations because she cited Dr. Ohagwu's opinion in the administrative hearing. [Doc. 21 at 1-2]. Plaintiff next concedes that the first application for SSI could not be opened, but argues that the second application could

---

[5]     At oral argument, the Commissioner indicated that the relevant time period covered the day after the denial of her second SSI application (December 8, 2001) to the date of the ALJ's decision (January 26, 2006).

have been reopened because the Commissioner made a no-disability determination on the second application on December 7, 2001, while Plaintiff filed her third SSI application on September 20, 2002. [*Id.* at 2].  Citing to *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), Plaintiff next argues that even if reopening is not appropriate, the ALJ should have considered the evidence from the previous applications because the ALJ needed to consider the longitudinal history of Plaintiff's medical impairments. [*Id.* at 2-3].  Plaintiff finally argues that Social Security Ruling 83-20,[6] permits the ALJ to consider evidence before the date of the SSI application to determine whether the severity requirements are met.  [*Id.* at 3-4].

        To determine whether an ALJ properly evaluates an application for SSI benefits, "the court must review the ALJ's finding that plaintiff was not disabled during the effective date of the Title XVI application," which is "in no case earlier than the month

_____

        [6]    In Plaintiff's supplemental brief, she cites to SSR 85-20, but SSR 85-20 is clearly inapplicable.  Instead, the Court's review of its notes from the Social Security oral arguments indicate that Plaintiff cited to SSR 83-20 at the hearing.  Also, a review of SSR 83-20 demonstrates that Plaintiff meant to cite to this Social Security Ruling, not SSR 85-20.  *See* SSR 83-20 (noting that "specific medical evidence of the exact onset date need not generally be obtained prior to the application date since there is no retroactivity of payment," but qualifying this statement by stating that "[t]here may be instances where it is necessary to establish that disability has existed for several consecutive months (possibly up to 12 months) immediately prior to the date of filing in order to assure that the severity/blindness requirements of the law are met").

6

in which the application is filed." *Bogle v. Sullivan*, 998 F.2d 342, 346 n.2 (6th Cir. 1993) (citing 42 U.S.C. § 1382(c)(6)[7]); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."); *see also* 20 C.F.R. §§ 416.330, 416.335.  Thus, a claimant applying for SSI benefits cannot receive SSI benefits for any months prior to the filing of the SSI application. *See* 20 C.F.R. § 416.335; SSR 83-20.  Although an applicant for SSI may only receive payments for the period after an application was filed, the Court concludes, as discussed below, that an ALJ is not precluded from considering evidence that predates the SSI application.

The regulations require a claimant to provide medical and other evidence about the effects of a claimant's impairments on her ability to work for the period the claimant asserts that she is disabled. 20 C.F.R. § 416.912(a), (c).  Before making a disability determination, the Commissioner must develop the claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant]

---

[7]     The code section that the *Bogle* decision relies upon is currently found at 42 U.S.C. § 1382(c)(7). Congress amended § 1382(c) in 1993, which led to this section being renumbered.  *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, sec. 13735(a)(2), 107 Stat 312, 662 (1993).

filed [her SSI] application unless there is a reason to believe that development of an earlier period is necessary." *Id.* § 416.912(d); *see also Dutil v. Barnhart*, 457 F. Supp. 2d 1321, 1324 n.4 (M.D. Fla. 2005) ("The Commissioner is only required to develop the medical history for the twelve month period prior to the filing of an SSI claim."). Evidence is "anything [the claimant] or anyone else submits" to the Commissioner or anything that the Commissioner "obtain[s] that relates to [a] claim," including, *inter alia*: medical signs, lab findings, medical history, medical opinions, statements about claimant's impairments, and findings by state agency medical and psychological consultants. *Id.* § 416.912(b)(1)-(3), (6). Once the record is developed, the ALJ must consider the medical opinions in the case record together with the rest of the relevant evidence that the ALJ receives. *See* 20 C.F.R. § 416.927(b). In making the disability determination, the Commissioner "will consider at each step of the review process any information [the claimant] present[s] and all the information in [the Commissioner's] records." 20 C.F.R. § 416.1400(b).

The Court concludes that, subject to the limitations below, the regulations require the ALJ to consider all relevant evidence in the administrative record, not just the evidence after the filing of the September 2002 SSI application. The ALJ not only had a duty to develop the record for "at least" the 12-month period prior to the filing of the

8

SSI application, *see* 20 C.F.R. § 416.912(d), but also had to consider all information in the Commissioner's record, *see* 20 C.F.R. § 416.1400(b).  As a result, the Commissioner is clearly wrong in arguing during briefing that the ALJ only had to consider evidence after September 2002.  [*See* Doc. 16 at 20-21].

Despite the above regulations, there are limits, however, to the evidence that the ALJ and this Court can consider.  Prior administrative determinations by the Commissioner are considered binding and final.  *See* 20 C.F.R. §§ 416.1405, 416.1487(a).  A prior final determination may be reopened on the Commissioner's own initiative or upon a claimant's request, *id.* § 416.1487, if it is reopened: (1) within 12 months of the date of notice of the initial determination for any reason; (2) within 2 years of the date of the notice of the initial determination for good cause; or (3) at any time if the prior determination was obtained through fraud.  *Id.* § 416.1488(a)-(c).  If an ALJ opts to keep a prior determination closed, this Court cannot review the decision not to reopen unless the claimant presents a colorable constitutional claim.  *See, e.g.*, *Cash v. Barnhart*, 327 F.3d 1252, 1256 & n.8 (11th Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)); *Graham v. Bowen*, 786 F.2d 1113, 1114 (11th Cir. 1986).  An ALJ, however, can effectuate a *de facto* reopening of a prior administrative decision when a prior claim is reconsidered on the merits to any extent

9

at the administrative level.  *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

An ALJ will not be deemed to have reopened a case if the ALJ considers evidence from

the prior application merely to determine whether to reopen the case.  *Id.*  Thus, a case

is not reopened if the ALJ evaluates evidence from the original application solely to

determine its res judicata effect on the second application.  *Id.* (citing *Cherry v.

Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985)).

If the Commissioner chooses not to reopen a case, the Commissioner may apply

the doctrine of res judicata to "avoid entertaining each subsequent request based on the

same issues."  *Kaszer v. Massanari*, 40 Fed. Appx. 686, 690 (3d Cir. 2002) (citing

*Purter v. Heckler*, 771 F.2d 682, 691 (3d Cir. 1985)).  "Res judicata bars subsequent

applications for . . . SSI based on the same facts and issues the Commissioner

previously found to be insufficient to prove the claimant disabled."  *Hillier v. Social

Sec. Admin.*, 486 F.3d 359, 364 (8th Cir. 2007).  Res judicata applies if the agency has

"made a previous determination or decision about [a claimant's] rights on the same

facts and on the same issue or issues, and this previous determination or decision has

become final by either administrative or judicial action."  20 C.F.R. § 416.1457(c);

*see also Green v. Heckler*, 803 F.2d 528, 530, (9th Cir. 1986) ("[W]hen a claimant

reapplies for disability benefits after an earlier denial, that earlier denial precludes the

AO 72A
(Rev.8/8
2)

claimant from arguing that he was disabled during the period covered by the earlier decision.").

"If res judicata applies, 'the medical evidence from the [previous] proceeding[s] cannot be subsequently reevaluated.'" *Hillier*, 486 F.3d at 365 (quoting *Bladow v. Apfel*, 205 F.3d 356, 360 n.7 (8th Cir. 2000)); *see also Wolfe*, 86 F.3d at 1079 (suggesting that a prior determination is "deemed reopened if the ALJ does not apply res judicata and bases an ultimate determination on a review of the record in the prior application").   Res judicata will not apply, however, if a claimant presents new evidence that her condition has changed or deteriorated.  *Hillier*, 486 F.3d at 365. New evidence includes: (1) facts and issues that differ from the facts and issues of the prior proceedings;  and  (2)  evidence  that  was  not  part  of  the  prior  record.   *Id.* "Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision." *Id.* (citing *Groves v. Apfel*, 148 F.3d 809, 810-11 (7th Cir. 1998)).  However, evidence from a previous administrative determination cannot be reevaluated and is instead used as a background for the new and additional evidence of

11

deteriorating physical conditions. *Id.* (quoting *Robbins v. Sec'y of Health and Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990)); *Green*, 803 F.2d at 530 ("The claimant therefore carries the burden of showing 'changed circumstances,' i.e., showing that his impairments have become more severe since the date of the earlier decision.").[8]

The Court concludes that although the ALJ did not explicitly state whether he was going to reopen the prior applications, the ALJ did not reopen the prior determinations and gave res judicata effect to the prior determinations because the ALJ only examined evidence that accompanied the current September 20, 2002, SSI application.[9]   The ALJ considered the following evidence in his decision:

_____

[8]   This discussion should not be read as precluding an ALJ from considering relevant evidence from a prior disability determination.  In fact, courts have determined that an ALJ may consider evidence from a prior application without reopening the previous determination.  *See Wolfe*, 86 F.3d at 1079 (holding that subsequent ALJ's consideration of conflicting VE testimony from two prior hearings was appropriate and did not constitute a reopening of the prior decisions); *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1337 (M.D. Fla. 2007) (citing cases and noting that "it was not error for the ALJ to consider the evidence from Plaintiff's prior application"); *see also Giancola v. Shalala*, 913 F. Supp. 638, 641 (D. Mass. 1996) ("[T]he ALJ is entitled to consider evidence from a prior denial for the limited purpose of obtaining the cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application.") (citing *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987)).

[9]   The Commissioner has filed supplemental authority (chapter I-2-9-1 of HALLEX), which indicates that the ALJ does not have a duty to address reopening or revision issues of prior determinations when the ALJ makes an unfavorable finding

12

(1) a December 22, 2002, report by Dr. Bobby Crocker; (2) a December 17, 2002, report by Donald Bowling, Ph.D.; and (3) medical records from Grady Health System between April 10, 2002, and February 21, 2005.  [R18-19].  All of this evidence related to Plaintiff's current application.  [*See* R228-458].  As a result, the ALJ did not reopen the prior applications, giving them res judicata effect.  *Wills v. Sec'y of Health and Human Servs.*, 686 F. Supp. 171, 173 (W.D. Mich. 1987) (noting that the ALJ's limited inquiry to events occurring after the filing of the second SSI application demonstrated that the ALJ did not reopen any previous application).   Therefore, this Court is precluded from considering any evidence prior the previous determinations that Plaintiff was not disabled.  *Id.*; *see also Hillier*, 486 F.3d at 365.  In other words, the Court cannot consider any evidence before December 8, 2001, the day after the Commissioner denied Plaintiff's April 24, 2001, application.[10]

_____

concerning the current application.  [*See* Doc. 20].  However, the Court will not rely on HALLEX because: (1) as the discussion in the text of this Order demonstrates, the Court does not need to rely on HALLEX in determining whether the ALJ reopened prior applications; and (2) HALLEX does not appear to be legally binding, *see Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *McCoy v. Barnhart*, 309 F. Supp. 2d 1281, 1285 (D. Kan. 2004).

[10]     Although the parties dispute in their supplemental briefs whether the ALJ should have reopened the prior determinations, the ALJ clearly did not reopen the case as explained above.  As a result, the Court cannot determine whether the ALJ's decision not to reopen was proper because Plaintiff has not advanced any constitutional

13

Therefore, the Court's summary of the medical record and discussion of legal issues will not include medical evidence that related to the prior administrative decisions because the ALJ did not rely on any of this evidence in making the disability determination.[11]

> B.    *The Relevant Medical Evidence*

---

arguments.  *See Cash*, 327 F.3d at 1256 & n.8.

[11]    The Court is well aware that an ALJ may rely on evidence from a previous determination as background.  There does not appear to be any statutory, regulatory, or Eleventh Circuit requirement that the ALJ must examine such evidence.  Without such a requirement from these authorities, the Court will not impose a requirement that an ALJ must examine evidence from a previous application even if it is relevant when the ALJ has given res judicata effect to the previous application.

The Court further recognizes that *Hamlin*, 365 F.3d at 1215, stated that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." The Court will not rely on *Hamlin* because as stated above, there is no requirement in statutory, regulatory, or Eleventh Circuit law that the ALJ must consider evidence from prior disability determinations.  Also, the Court finds that *Hamlin* is distinguishable. In *Hamlin*, the Tenth Circuit evaluated whether the ALJ should have rejected the opinions of two treating physicians who treated the plaintiff during his prior disability applications as well his current disability applications.  *See Hamlin*, 365 F.3d at 1217-18.  The facts of the instant case are distinguishable on two grounds.  First, the opinions that Plaintiff seeks the ALJ to review are from one-time examining doctors, not treating doctors.  Second, these opinions were solely from the period of the prior applications. There is no evidence that any of the one-time examining doctors re-examined Plaintiff during her current disability application.  As a result, the Court concludes that *Hamlin* is inapplicable.

On April 3, 2002, Plaintiff was seen at the Grady Health System ("Grady") pain clinic for lower back pain, right hip pain, and leg spasms.  She indicated that her pain was 8 out of 10, and she experienced constant aching.  Plaintiff's medications were increased, and she was told to follow up in one month.  Plaintiff tested positive on straight leg lifts.  [R423].  Plaintiff returned on October 9, 2002, and complained of aching, burning, or stabbing pain.  She had tenderness in her L5 spine (the lower segment of the lower back).[12]  She had a positive straight leg lift on her right and decreased sensation to pinprick on her right L5-S1.  [R422].

Dr. Bobby Crocker performed a consultative exam on December 3, 2002, and noted that Plaintiff had a normal respiratory pattern and good air exchange in her lungs. Plaintiff's joints did not show any warmth, tenderness, swelling, scarring or deformity, but there was tenderness in the L5 region of Plaintiff's back.  Plaintiff walked with a normal gait and without an assistive device, but she ambulated slowly.  She also had trouble getting on and off the examining table because of back pain.  Plaintiff had mildly decreased grip strength in both hands, but otherwise had 5/5 motor strength.

---

[12]     Unless otherwise specified, the Court has determined the meaning of medical terms or learned information about medical disorders from the Medline Plus encyclopedia or dictionary.  *See* MedlinePlus, http://medlineplus.gov/ (last visited August 7, 2007).

AO 72A
(Rev.8/8
2)

[R312].  Plaintiff had negative straight leg raising bilaterally, but she could not heel and toe walk.  [R313].  Dr. Crocker found no evidence of obvious depression.  Dr. Crocker diagnosed Plaintiff with: osteoarthritis of the lumbar spine, asthma, right hip pain, and bilateral carpal tunnel syndrome.  He determined that Plaintiff had very mildly decreased dexterity and fine motor skills in her hands.  Plaintiff had a moderate impairment in her lower back, which would cause problems with lifting, bending, walking, and standing for any significant period.  Plaintiff only had minor impairments concerning her right hip.  [R313].

On December 17, 2002, Dr. Donald Bowling, Ph.D., performed a psychological exam.  He noted that Plaintiff was cooperative, but she appeared to be in some physical discomfort with her back.  Plaintiff had good concentration and a slightly depressed mood with flat affect.  She had normal form and content of her thoughts, and she had clear and organized speech with good ability to comprehend and respond to questions.  [R318].  Dr. Bowling found that Plaintiff's physical problems were not having a negative impact on her psychological functioning.  He also determined that Plaintiff would not have problems understanding and carrying out instructions or sustaining attention to complete tasks in a timely manner.  As a result, he found Plaintiff's prognosis to be good.  Dr. Bowling gave the following diagnosis: (1) alcohol and

16

AO 72A
(Rev.8/8
2)

cocaine dependence in remission on Axis I; (2) no diagnosis on Axis II; and (3) refer to medical report for Axis III. [R319].

David Williams, Ph.D., completed a psychiatric review technique on January 31, 2003, and found that Plaintiff had substance addiction disorders in remission. [R320, 328]. As a result, he determined that Plaintiff had mild limitations of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. [R330].

Dr. Hector Manlapas completed a physical RFC assessment on January 27, 2002, and determined that Plaintiff could: (1) occasionally lift 20 pounds; (2) frequently lift 10 pounds; (3) sit, stand, or walk for 6 hours in an 8-hour day; and (4) push or pull with some limitations in her upper extremities because of carpal tunnel syndrome. [R303]. Dr. Manlapas determined that Plaintiff could frequently stoop and kneel, but occasionally climb, crouch, and crawl. [R304]. Plaintiff was also limited in fine manipulation with her fingers and in her near and far acuity. [R305]. Plaintiff had no communicative or environmental limitations. [R306]. Dr. Manlapas concluded that Plaintiff's allegations of back and hip pain were partially credible because of the lack of corroborating physical evidence. [R307]. Dr. Manlapas stated that he did not give Dr. Crocker much weight for limitations stemming from: (1) carpal tunnel syndrome

17

because Plaintiff was not diagnosed with the condition; or (2) problems with standing and walking because these problems were not quantified.  [R308].

On March 11, 2003, Plaintiff went to Grady and was assessed with right hip/paraspinal pain.  [R420-21].  Plaintiff went to the pain clinic on March 12, 2003, which indicated that an MRI confirmed degenerative disc disease at the L-5 spine. Plaintiff responded well to injections and managed with her medication regime. [R419].  On March 20, Plaintiff went to the pain clinic for back, hip, and buttock pain where she underwent a right L3 to L5 medial branch block.  [R418].

Plaintiff went to Grady on April 7, 2003, stating that she was very unhappy with her injection and reporting being miserable with pain.  [R415].  Plaintiff was assessed with stable asthma and degenerative joint disease for the right hip.  A note indicated that Plaintiff would be referred to a clinic for evaluation for a hip replacement.  [R416].

On May 6, 2003, Robert Koontz, Ph.D., performed a psychiatric review technique and determined that Plaintiff had substance addiction disorders in remission. [R334, 342].  As a result, he determined that Plaintiff had mild limitations of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  [R344].

18

On May 27, 2003, Dr. M. Wilson completed a physical RFC assessment and determined that Plaintiff could: (1) occasionally lift 20 pounds; (2) frequently lift 10 pounds; (4) sit, stand, or walk for 6 hours in an 8-hour day; and (5) push or pull without limitation. [R349]. Dr. Wilson found that Plaintiff could frequently stoop or kneel and occasionally climb, crouch, or crawl. [R350]. Dr. Wilson found no communicative, manipulative, visual, or environmental limitations. [R351-52]. Dr. Wilson found Plaintiff's back and hip pain only partially credible because the objective findings showed no significant motor sensory or reflex deficits. [R356].

On December 3, 2003, Plaintiff was seen for a lot of abdominal pain. The note indicated that Plaintiff was taking a lot of pain medications. [R413]. A separate medical note indicated that Plaintiff's gait was inhibited by pain, and she had limited ROM. Plaintiff experienced increased pain for flexion and extension of her waist. Plaintiff's strength was limited by pain in the right lower extremity. Her straight leg raises were negative. [R412].

Plaintiff presented at the Grady emergency room with right upper quadrant abdominal pain on March 4, 2004. [R364]. An examination determined that she had a thickened, inflamed gallbladder with extensive surrounding fibrosis, and the gallbladder was packed with multiple small and large stones. [R361]. On March 5,

19

2004, Plaintiff had an open cholecystetomy performed, whereby her gallbladder was removed. [R358, 361-62]. She was discharged after the procedure on March 9. [R357-358].

A note from August 4, 2004, indicated that Plaintiff had last been seen in June 2004 for a plan to increase medication and for medication management. The note also indicated that Plaintiff had been out of medication and had not filled her prescription from the last visit. Plaintiff planned to get her prescription filled on that day. An exam indicated lumbar pain, and increased pain with flexion, extension, and lateral rotation. She had positive right straight leg raise, but negative left straight leg raise. Plaintiff was diagnosed with lumbar radiculopathy (a pathological condition of the nerve roots in the back) and lumbar spondylosis (a degenerative disease of the spine). [R411].

On October 4, 2004, Plaintiff was seen for hand rehabilitation where she had pain on her right forearm and numbness on her right ring and middle fingers. A Tinel's test at the median nerve at the wrist was negative bilaterally, but a Phalens test was positive

20

on the right.[13]   Plaintiff's carpal tunnel syndrom had not improved.   [R410]. An October 18, 2004, visit for hand rehab found no improvement.  [R409].

A November 8, 2004, note from the pain clinic indicated that Plaintiff had a history of noncompliance with her medications.  She reported taking all of medications on November 8 and that they had provided some relief.  Plaintiff was diagnosed with lumbar radiculopathy and lumbar spondylosis.  [R408].

Plaintiff was seen on November 15, 2004, for hand therapy where she had pain in her right forearm and arm.  Phalen's test was positive on her right hand.  Tinel's test was negative in both hands.  [R407].

On December 20, 2004, Plaintiff went to the emergency room complaining of constant chest pain.  [R403].  Plaintiff was assessed with a panic attack stemming from multiple psychosocial concerns.  [R402].

C.    *Plaintiff's Work History*

For Plaintiff's September 20, 2002, SSI application, Plaintiff described her past work history in two documents - - a September 20, 2002, document, [R247-48], and an

---

[13]    There is a positive Tinel's sign when tapping of the median nerve at the wrist causes pain to shoot from the wrist to the hand.  Phalen's test bends the wrist forward all the way for 60 seconds and is positive when there is numbness, tingling, or weakness.

AO 72A
(Rev.8/8
2)

October 15, 2002, work history report, [R264-71].  In the September 2002 document, Plaintiff reported working in salad prep at a restaurant in 1999 for 8 hours per day and 5 days per week at a rate of $6.00 per hour.  Plaintiff cleaned the Civic Center from 1998 to 1999 where she worked 5 hours per day for 6 days per week at a rate of $5.50 per hour.  Plaintiff then cleaned at a mall from 1999 to 2000 where she worked 8 hours per day, five days per week, at a rate of $5.30 per hour.  [R248].

Plaintiff reported that at the job she worked the longest (the Civic Center job), she cleaned, vacuumed, mopped, and emptied trash.  During the day, Plaintiff walked for 2 hours, stood for 2 or 3 hours, sat for 30 minutes, climbed for 20 minutes, kneeled for 3 to 4 minutes, crouched once or twice, and grabbed big objects.  The heaviest objects that Plaintiff lifted were 20 pounds and other weight while Plaintiff frequently lifted 25 pounds.  [R248].

In the October 2002 work history report, Plaintiff indicated that she worked as a cleaner from 1998 to 1999, worked as a salad prep in 1999, and worked as a mall cleaner in 1999.  [R264].  Regarding the first cleaning job at the Civic Center, Plaintiff indicated that she worked 4 hours per day for 5 to 6 days per week at a hourly rate of $5.50.  Plaintiff cleaned, vacuumed, carried trash, and mopped.  Plaintiff indicated that during the day, she walked and stood for 1 hour, sat for 30 minutes, climbed and

22

stooped for 20 minutes, crouched for 10 to 20 minutes, handled big objects for 30 minutes, and reached for 30 minutes.  Plaintiff frequently lifted 15 pounds, and the heaviest she lifted was 20 pounds.  [R265].  Plaintiff performed her second cleaning job 6 days per week for 7 hours per day at a rate of $5.30 per hour.  Plaintiff cleaned, emptied trash, and mopped.  During the day, she walked for 3 to 4 hours, stood for 4 to 5 hours, sat for 30 minutes, climbed 3 to 4 times per day, stooped 5 to 6 times, kneeled and crouched for 4 to 5 hours, and reached 3 to 10 minutes.  Plaintiff indicated that the heaviest she lifted was 10 pounds and 15 pounds, and she frequently lifted 10 pounds to 15 pounds.  [R267].  Plaintiff did not work earlier because her former husband took care of her until 1997.  [R271].

D.      *The August 4, 2005, Evidentiary Hearing Testimony*

At the August 4, 2005, evidentiary hearing, Plaintiff was 55 years old.  [R432]. She reported finishing the eleventh grade but never obtaining a GED.  [R433].  Plaintiff reported that sh e last worked in 1999 performing housekeeping work.  She also previously did food preparation and cleaned houses.  [R434-35].

Plaintiff described having sharp pain in her back, hip, and neck.  [R435-36]. This pain was constant.  Plaintiff became drowsy and developed headaches from her medications.  She used a walking stick.  [R437].  She could stand for 15 minutes, but

23

she had to lean against items because she sometimes lost her balance and her hip and lower back hurt.  Plaintiff could walk for 10 to 15 minutes.  Plaintiff could sit for 20 minutes, but she had to move from side to side and bend over because of the pain. Plaintiff stated that she could carry 5 to 10 pounds for a few minutes, but not constantly.  [R439].  Plaintiff wore braces on her hands because her fingers locked up. [R439-40].  Plaintiff indicated that her hands caused her to drop things a lot, and she could not write for very long because her fingers became numb.  [R444].

Plaintiff reported that her depression symptoms included crying and not wanting to be around people.  [R444].  Plaintiff took two types of depression medication. [R443].  Plaintiff went to Med-One for mental therapy every three months.  [R447].

Plaintiff stated that her daughter went grocery shopping for her, but Plaintiff did not accompany her daughter because it was too hard to stand and walk for the one hour that it took to go shopping.  [R445].  Plaintiff did not cook anymore because the standing and monitoring of pots hurt her legs and back too much. [R445-46].  The pain felt like something being stuck in her leg.  Plaintiff also had muscle spasms.  [R446]. Plaintiff could not concentrate well.  [R446].  Plaintiff needed to use an inhaler for shortness of breath that occurred after three or five minutes of walking.  [R449]. Plaintiff stated that her asthma came and went.  [R454].

24

Plaintiff stated that because of her fingers, she could not push a vacuum.  [R450].
During the day, Plaintiff watched television or listened to gospel music.  She normally
would lie on her back with her leg elevated.  [R451].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since
September 19, 2002.

2.    The medical evidence establishes that the claimant has severe
carpal tunnel syndrome and arthritis of the lumbar joint L5-S1; but
that she does not have an impairment or combination of
impairments listed in, or medically equal to, one listed in Appendix
1, Subpart P, Regulations No. 4.

3.    The claimant's allegations of her complete inability to work are not
fully credible and are not supported by the other evidence in the
record.

4.    The claimant has the residual functional capacity for standing and
walking six hours in an eight-hour workday, sitting two hours in an
eight-hour workday, frequently lifting and carrying 10 pounds with
a heaviest weight lifted of 20 pounds occasionally, and occasionally
bending and stooping, but no constant fine manipulation with her
hands (20 CFR 416.975).

5.    The claimant's past relevant work as a housekeeper (DOT Code
323.687-014) did not require the performance of work-related
activities precluded by the above limitations.

25

6.     That the claimant's impairments do not prevent her from performing her past relevant work.

7.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

[R22].

The ALJ explained these findings as follows. The ALJ determined that Plaintiff had previous work experience as a housekeeper under the Dictionary of Occupation Titles ("DOT") Code 323.687-014. The ALJ noted that a housekeeper involves light work in which no more than 20 pounds is lifted but in which there is frequent lifting or carrying of objects weighing up to 10 pounds. [R18]. The ALJ noted that Plaintiff had been seen for low back pain, right hip pain, asthma, carpal tunnel syndrome, bilateral right fingers trigger, chest pain, and hypertension, but concluded that Plaintiff only had the following severe impairments: carpal tunnel syndrome and arthritis of the lumbar joint L5-S1. The ALJ determined that these impairments did not meet or equal a Listing.

The ALJ found that Plaintiff had the following residual functional capacity ("RFC") based on "the medical evidence, testimony at the hearing, and the earlier statements": (1) the ability to walk and stand for six hours in an eight-hour day;

26

AO 72A
(Rev.8/8
2)

(2) the ability to sit for two hours in an eight-hour workday; (3) the ability to frequently lift and carry 10 pounds and the ability to carry up to 20 pounds occasionally; (4) the ability to occasionally bend and stoop; and (5) the inability to perform constant fine manipulation with her hands.   The ALJ noted that the restriction on hand manipulation covered Plaintiff's carpal tunnel syndrome while the reduction to occasional bending and stooping accommodated Plaintiff's back impairment.  [R19].

The ALJ cited to evidence from Dr. Crocker's December 2002 report and Dr. Bowling's report in determining that Plaintiff was not disabled.   [R19-20]. The ALJ noted that although Dr. Crocker found that Plaintiff had a moderate impairment regarding her lower back, which would cause lifting, bending, walking, and standing problems, Plaintiff only had mildly decreased dexterity and a minor impairment concerning her right hip.   However, the ALJ did not give weight to Dr. Crocker's statements about Plaintiff's difficulty with prolonged lifting, bending, walking, and standing because these findings were not in proportion to the objective findings of the exam.  [R20].

As for Dr. Bowling, the ALJ noted that Dr. Bowling did not give Plaintiff a psychological diagnosis because there was no evidence that Plaintiff's physical symptoms negatively impacted her psychological functioning.  Further, the ALJ noted

27

that Dr. Bowling found no problems with Plaintiff's ability to understand and complete instructions or sustain attention to complete tasks. [R20]. The ALJ further noted that Plaintiff's interest in watching television, listening to Gospel music, and reading the Bible implied that Plaintiff could carry out many activities of daily living and therefore contradicted the alleged dysfunctional limitations.

The ALJ indicated that he had considered the findings of fact by the state agency consultants and given determinative weight to these findings because they were consistent with the record. The ALJ then determined that Plaintiff was not disabled because her limitations did not preclude her from performing her past relevant work as a housekeeper. [R21].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities, which are demonstrable by medically accepted clinical or laboratory diagnostic techniques. These

28

impairments must be of such severity that the claimant is not only unable to do previous work, but also, considering age, education, and work experience, is unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that she is not undertaking substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i). At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments, which significantly limits her ability to perform basic work-related activities. *See* 20 C.F.R. § 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R.

29

§ 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, she must prove that the impairment prevents performance of past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  *See* 20 C.F.R. § 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant applying for SSI benefits to prove that she is unable to engage in any substantial gainful activity that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to the Commissioner's denial of Social Security benefits.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d

31

at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.    CLAIMS OF ERROR

Plaintiff raises the following seven claims of error:[14] (1) whether the ALJ erred in determining that Plaintiff had past relevant work as a housekeeper; (2) whether the ALJ erred in concluding that Plaintiff could perform her past work as a housekeeper; (3) whether the ALJ erred in not having a vocational expert ("VE") at the hearing; (4) whether the ALJ erred in omitting Plaintiff's asthma, depression, and degenerative hip disease at step two of the evaluation process; (5) whether the ALJ erred in not

---

[14]    Plaintiff raises ten claims of error in her brief, but the Court has consolidated some of these claims in listing the issues.  [Doc. 15 at 1-3].

AO 72A
(Rev.8/8
2)

stating the weight given to the opinions of Dr. Ohagwu, Dr. Hamby, and Dr. Coker; (6) whether the ALJ erred in discounting Dr. Crocker's consultative examination; and (7) whether the ALJ erred in formulating a residual functional capacity.[15]

## VII.   DISCUSSION

### A.      Step Two: Severity of Medical Conditions

Plaintiff argues that the ALJ erred in omitting Plaintiff's asthma, depression, and degenerative hip disease at step two of the evaluation process because medical records provided diagnoses of these conditions.  [Doc. 15 at 23-27].

The Commissioner responds that the ALJ committed no error at step two because although he may not have considered asthma, depression, and degenerative hip disease, he ruled in Plaintiff's failure by finding that Plaintiff had a combination of impairments considered severe.  [Doc. 16 at 11].  The Commissioner also argues that the ALJ failed to show that Plaintiff's physical condition prevented her from performing light work. [*Id.* at 12].   The Commissioner next claims that although Dr. Crocker diagnosed Plaintiff with asthma and right hip pain, there were no objective findings to support the conclusion, and even if there were, Dr. Crocker never found that Plaintiff's conditions

---

[15]      The Court discusses these issues in a different order from the one presented by Plaintiff.

AO 72A
(Rev.8/8
2)

caused any limitations.  [*Id.* at 13-14].  The Commissioner further argues that none of the records from the relevant period indicate that Plaintiff's condition caused additional limitations on her ability to work.  [*Id.* at 14-16].

Finally, the Commissioner argues that Plaintiff's depression was not a severe mental impairment and did not interfere with her ability to work because: (1) Dr. Bowling did not diagnose any mental condition; (2)  the only evidence of Plaintiff's mental condition was from the record before the relevant time period; and (3) the state examining consultants, whose opinions were supported by the record, found no severe mental impairment. [*Id.* at 16-17, 19-20].  The Commissioner asserts that even if Plaintiff was taking psychotropic medication, the lack of treatment for mental problems demonstrated that the medication controlled the depression.  [*Id.* at 17].  As for Plaintiff's December 2004 anxiety related treatment, the Commissioner argues that there is no indication that Plaintiff's condition affected her basic work activities or was sufficient to show that the anxiety lasted for 12 consecutive months. [*Id.* at 18-19].

34

The Commissioner considers at step two whether a claimant has an impairment that is severe and that meets the duration requirement.[16] 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[17]   20 C.F.R. § 416.920(c).  An impairment is determined to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  Social Security Ruling ("SSR") 85-28;[18] *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("An impairment can be considered as not severe only if it is a slight abnormality which has such a

_____

[16]     The duration requirement is as follows: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.  This regulation does not require that the impairment last 12 months, but requires that the impairment either last or be expected to last for a continuous period of 12 months or more.  *See* 20 C.F.R. § 416.905(a); *see also Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1216 (N.D. Ala. 2004).

[17]     Basic work activities are "the abilities and aptitudes necessary to do most jobs," which include physical functions, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to work situations, coworkers, and supervisors, and dealing with changes in the work setting.  20 C.F.R. § 416.921(b)(1), (3)-(6); *see also Davis v. Heckler*, 748 F.2d 293, 296 n.7 (5th Cir. 1984) (indicating that § 416.620(c) must be read in light of § 416.921(b)).

[18]     Social Security Rulings are binding on all components of the Social Security Administration.  *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006).

AO 72A
(Rev.8/8
2)

minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."). Thus, "[t]he severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. The Eleventh Circuit and other circuits have described the severity standard as "de minimis." *See Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Step two, then, is a de minimis screening device [used] to dispose of groundless claims . . . .") (citations and internal quotation marks omitted); *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("We have characterized this showing as 'de minimis,' but the mere presence of a condition is not sufficient to make a step-two showing.").

The Court concludes that substantial evidence supports the ALJ's decision that Plaintiff's asthma and depression were not severe impairments, but that substantial evidence does not support the ALJ's omission of Plaintiff's hip impairment as a severe impairment. Regarding depression, Dr. Bowling performed a psychological evaluation on Plaintiff but did not diagnose Plaintiff with any sort of depression. Dr. Bowling may have noted that Plaintiff had a slightly depressed mood and a flat affect, but he apparently did not find these were significant to make a depression diagnosis.

36

[*See* R318-19].  The state agency consultants thereafter followed suit by not making a finding of depression.  [R330, 334].  Thus, there is no medical evidence relating to Plaintiff's September 2002 SSI application that Plaintiff suffered from depression.  The Court recognizes that Plaintiff testified to taking two types of depression medication. [R443].  However, at step two, the ALJ is only supposed to consider the medical evidence.  *See* SSR 85-28 (noting at the second step that "medical evidence alone is evaluated").  Thus, Plaintiff's testimony about her medications without some evidence in the medical record from the September 2002 SSI application cannot demonstrate severity.  The Court can only conclude that substantial evidence supports the ALJ's finding that Plaintiff's depression was not a severe impairment.[19]

Concerning Plaintiff's asthma, the following evidence from the medical record relates to Plaintiff's asthma:  Dr. Crocker diagnosed Plaintiff with asthma, [R313]; Plaintiff was assessed with stable asthma in April 2003, [R416]; and Plaintiff complained at her hearing that asthma caused shortness of breath after 3 to 5 minutes of walking, [R444].  Initially, the Court notes that the medical evidence does not

---

[19]     Plaintiff argues that her December 20, 2004, panic attack somehow requires that the ALJ have made a finding that she suffered from depression.  However, in the absence of medical evidence linking the panic attack with depression, the Court cannot assume that the two are linked.

support Plaintiff's testimony given that there is no evidence that Plaintiff's asthma was as severe as she reported. One medical notation indicated that Plaintiff's asthma was stable while Dr. Crocker's asthma diagnosis was accompanied with findings that Plaintiff's breathing was normal and Plaintiff had good air exchange. [R312]. The medical notation about Plaintiff having stable asthma does not suggest that it had more than a minimal effect on Plaintiff's ability to work. Finally, Dr. Crocker's asthma diagnosis does not suggest that Plaintiff's asthma would have had any effect on Plaintiff's ability to work given Plaintiff's normal breathing and normal respiratory patterns. [R312]. Although the threshold for determining whether an impairment at step two is low, the Court concludes that substantial evidence supports the ALJ's decision that Plaintiff's asthma was not a severe impairment given the lack of medical evidence that it affected Plaintiff's ability to work.

Concerning Plaintiff's hip impairment, substantial evidence does not support the ALJ's determination that Plaintiff's hip impairment was not severe at step two. The Court recognizes that Dr. Crocker noted that Plaintiff's hip x-ray from 2001 showed no abnormality and Dr. Crocker found Plaintiff to have normal ROM in her hip. [R313, 315]. However, Dr. Crocker also diagnosed Plaintiff with right hip pain and noted that Plaintiff had minor impairments in her hip. [R313]. Other medical

evidence shows that after April 2002 Plaintiff sought treatment for hip pain. [R415-16, 418, 420-21, 423]. A Grady doctor determined that Plaintiff had degenerative hip disease and referred Plaintiff for evaluation for a hip replacement. [R416]. Finally, the Court notes that the medical evidence demonstrates that Plaintiff had difficulty walking by ambulating slowly and being unable to toe and heel walk. [R312-13]. This evidence suggests that Plaintiff's hip impairment was not de minimis, but would interfere with her ability to perform basic work activities. The ALJ never explained why he failed to find Plaintiff's hip pain to be non-severe. [R19].[20] Based on this evidence and the lack of explicit explanation by the ALJ, the Court cannot find that substantial evidence supports the ALJ's conclusion that Plaintiff's hip impairment did not constitute a severe impairment.

The Commissioner argues that there is no error at step two because the ALJ ruled in Plaintiff's favor and continued with the evaluation process. The Commissioner relies on an unpublished Eleventh Circuit decision, *Council v. Barnhart*, No. 04-13128, at 4

---

[20] The Commissioner's Social Security Ruling 85-28 requires the ALJ to make "an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities" before finding an impairment not severe. SSR 85-28. Although the ALJ did not perform such an evaluation, the Court does not assign any error because Plaintiff did not raise the issue before the Court. Instead, the Court identifies SSR 85-28 for the ALJ to consider on remand.

(11th Cir. Dec. 28, 2004), and a published Sixth Circuit opinion, *Maziarz v. Secretary of Health and Human Services*,[21] 837 F.2d 240, 244 (6th Cir. 1987). [Doc. 16 at 11-12]. The Court recognizes that the *Council* decision stated that "the ALJ could not have committed any error at step two" because the ALJ continued to the next step in the process. *Council*, No. 04-13128, at 4. The Court finds, however, that the Eleventh Circuit probably meant to hold that there was no reversible error at step two.

Courts have employed a harmless error analysis for step two errors. For instance, the Sixth Circuit has held that the ALJ's failure to find additional severe impairments at step two "is harmless [error]" as long as the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of the claimant's impairments in determining her residual functional capacity." *Swartz v. Barnhart*, 188 Fed. Appx. 361, 368 (6th Cir. 2006) (citing *Maziarz*, 837 F.2d at 244). Also, courts have not automatically found that all errors at step two are harmless whenever the ALJ moves beyond step two in the sequential evaluation process. *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007); *Crider v. Barnhart*, 427 F. Supp. 2d 999, 1010 (D. Colo. 2006) (finding error in omitting impairment at

---

[21]    The functions of the Secretary of Health and Human Services were transferred to the Commissioner of the Social Security Administration. *Miles v. Chater*, 84 F.3d 1397, 1399 n.1 (11th Cir. 1996).

AO 72A
(Rev.8/8
2)

Step two was not harmless because it might have impacted the ALJ's RFC determination); *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 518 (D. Md. 2002) ("Erroneous findings at Step Two usually infect the entire decision, since all of a claimant's impairments must be considered in combination at Steps Three, Four and Five."). Instead, courts examine whether the error at step two infected another portion of the evaluation process. *See Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054 (E.D. Wis. 2005) (noting that an error in omitting an impairment as severe at step two will be harmless if the ALJ fulfilled his obligation at step 4). Because the Court has determined below that the ALJ needs to re-evaluate the RFC determination, the Court will not find the ALJ's error in determining that Plaintiff's hip impairment was not severe to be harmless error.

Accordingly, the Court **REVERSES** the ALJ's step two determination and **REMANDS** for the ALJ to consider whether the hip impairment is severe and, if the hip impairment is not severe, to explain this finding pursuant to SSR 85-28.

### B.    *Discussion of Consultative Examiner Reports*

Plaintiff argues that the ALJ erred by failing to discuss the weight given to the examination reports of Dr. Ohagwu from October 9, 2001, Dr. Hamby from April 10, 2000, and Dr. Coker from June 15, 2000. [Doc. 15 at 27-31]. The Commissioner

responds that the ALJ did not need to consider the evidence from Dr. Ohagwu, Hamby, and Coker because they examined Plaintiff for her prior SSI applications and the Commissioner considered the reports in Plaintiff's prior no-disability determinations. [Doc. 16 at 20-21].

As discussed above, the regulations provide that the Commissioner "will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence" that the Commissioner receives. 20 C.F.R. § 416.927(b).  Thus, "[r]egardless of its source, [the Commissioner] will evaluate every medical opinion that [he] receive[s]."  *Id.* § 416.927(d).

The Court concludes that the ALJ did not evaluate the opinions of Dr. Ohagwu, Dr. Hamby, and Dr. Coker.  A review of the ALJ's decision makes no reference to these examining consultants opinions.  [*See* R17-22].  The only medical opinions that the ALJ mentioned were those of Dr. Crocker and Dr. Bowling.  [*See* R18-20].  As a result, it is clear that the ALJ never discussed these opinions.

The Court concludes, however, that the ALJ did not err in failing to consider the opinions of doctors Hamby, Ohagwu, and Coker.  These three opinions were submitted in relation to Plaintiff's prior SSI applications in which she complained of a disability beginning in July 1999.  In Plaintiff's current SSI application, she again has complained

42

of being disabled since July 1999.  Thus, she is re-litigating the same claim that has previously been determined by the Commissioner.  The prior opinions have res judicata effect on Plaintiff's current application.  Thus, the Commissioner did not have to re-evaluate the evidence from the prior administrative decisions and this Court cannot reconsider this evidence since it was given res judicata effect.  *See Hillier*, 486 F.3d at 365.  It was therefore not error for the ALJ to refrain from considering the opinions from Drs. Ohagwu, Hamby, and Coker since they were considered with the previous applications for disability.  *See id.*; *Wills*, 686 F. Supp. at 173.

Accordingly, the ALJ did not err by ignoring the opinions of doctors Ohagwu, Hamby, and Coker.

C.      *Weight Given to Dr. Crocker's Opinion*

Plaintiff argues that the ALJ erroneously discounted the opinion of Dr. Crocker because, contrary to the ALJ's findings, Dr. Crocker's opinion was consistent with the limitations that he gave Plaintiff.  Plaintiff then contends that it was improper to give determinative weight to the non-examining doctors when Dr. Crocker's opinion was supported by the objective evidence.  [Doc. 15 at 31-33].

The Commissioner responds that substantial evidence supports the ALJ's decision not to give weight to Dr. Crocker's opinion because it is not supported by the

43

objective medical findings in Dr. Crocker's report or the evidence in the medical record.  [Doc. 16 at 23-25].  The Commissioner asserts that Plaintiff's conservative treatment provided substantial evidence to undermine Dr. Crocker's opinion. [*Id.* at 25].  Finally, the Commissioner identifies Plaintiff's daily activities and the state agency consultants as providing further evidence to reject Dr. Crocker's opinion. [*Id.* at 25-26].

The Commissioner evaluates every medical opinion that is received.  20 C.F.R. § 416.927(d).  In determining the weight of medical opinions, the ALJ must consider: (1) the examining relationship; (2) the treating relationship; (3) evidence supporting the conclusions; (4) the consistency of the opinion with the record; (5) the medical expert's area of specialty; and (6) other factors, including the amount of understanding of disability programs and the familiarity of the medical source with information in claimant's case record.  20 C.F.R. § 416.927(d)(1)-(6).  A non-examining doctor's report should be given little weight when it contradicts that of an examining doctor's report.  *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); *see also Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990); *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (according "little weight" to a non-examining physician's opinion if it contradicts the opinion of the only physician to examine the

44

patient).   Thus, the ALJ should generally give greater weight to the examining

physician's report than a non-examining physician's.   *See Broughton v. Heckler*,

776 F.2d 960, 962 (11th Cir. 1985).   However, opinions from state agency consultants

may be given greater weight than the opinion of treating or examining sources

"[i]n appropriate circumstances."  SSR96-6p; *see also Sryock v. Heckler*, 764 F.2d 834,

835 (11th Cir. 1985) ("The law is clear that, although the opinion of an examining

physician is generally entitled to more weight than the opinion of a non-examining

physician, the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion."); 20 C.F.R. § 416.927(d)(1).   Where the ALJ gives

greater weight to the non-examining source, the ALJ must give cause for not affording

considerable weight to the examining doctor.  *Sharfarz v. Bowen*, 825 F.2d 278, 280-81

(11th Cir. 1987).

The Court concludes that substantial evidences supports the ALJ's decision not

to give Dr. Crocker's opinion[22] weight concerning Plaintiff's ability to stand, walk, or

---

[22]     Dr. Crocker gave Plaintiff the following diagnoses: osteoarthritis of
lumbar spine, bilateral carpal tunnel syndrome, asthma, and right hip pain.  He then
concluded that Plaintiff's dexterity and fine motor skills were mildly decreased;
Plaintiff had a moderate impairment from her lower back, which would affect lifting,
bending, walking, and standing for any significant time or any significant magnitude;
and Plaintiff's hip impairment was minor.  [R313].  The ALJ rejected Dr. Crocker's
statement that Plaintiff would have difficulty with prolonged lifting, bending, walking,

lift for prolonged periods.  The Court finds, however, that substantial evidence does not support the ALJ's decision to reject Dr. Crocker's opinion that Plaintiff could not bend for significant periods.

Regarding the ALJ's decision not to give weight to Dr. Crocker's conclusions about walking and standing for a significant time, the Court recognizes that there is objective evidence in the record to support Dr. Crocker's finding, namely, Plaintiff's slow ambulation, back tenderness, mild to moderate degenerative osteoarthritis, and inability to toe or heel walk.  [*See* R312-13].  That substantial evidence supports Dr. Crocker's opinion does not require reversal if substantial evidence also supports the ALJ's conclusion.  *See Barron*, 924 F.2d at 230.  The Court finds that other objective findings provide substantial evidence for the ALJ to conclude that Dr. Crocker's conclusions were out of proportion with the evidence.  Plaintiff had normal breathing and respiratory pattern.  Plaintiff had a normal gait and did not require an assistive device for walking.  Plaintiff had no cyanosis, clubbing, edema, varicosities, or ulcerations in her extremities.  Plaintiff's joints did not show warmth, tenderness, swell, scarring, or deformity. Plaintiff did not have muscle spasms, scarring, or swelling in her

---

and standing because these limitations were out of proportion with Dr. Crocker's objective findings.  [R20].

46

back.  [R312].  Plaintiff's leg raising was negative.  Her hip x-ray was negative.

[R313].  Although the issue is close, the Court concludes that substantial evidence

supports the ALJ's decision to reject the significant limitations concerning Plaintiff's

ability to stand and walk given her normal gait, lack of an assistive device, negative hip

x-ray, and absence of swelling and spasms in her back.

Regarding the ALJ's decision not to give weight to the findings of Dr. Crocker's

lifting limitation, the Court again recognizes that certain evidence would support the

lifting limitation, including Plaintiff's back being tender, Plaintiff having difficulty

climbing on and off the examining table, Plaintiff having limited ROM in her back, and

x-rays showing mild to moderate degenerative osteoarthritis.  [R312-14].  However,

Dr. Crocker found that Plaintiff only had mildly decreased grip strength in both hands,

and her hands were essentially normal.  [R312, 315-16].  Plaintiff had 5/5 motor

strength throughout.  Plaintiff did not require an assistive device to walk, and her joints

were not warm, tender, swollen, scarred, or deformed.  Plaintiff had a normal

respiratory pattern.  [R312].  Also, Plaintiff had normal ROM for every other area of

her body except the back.  [R314-15].  Dr. Crocker also determined that Plaintiff could

lift light objects.  [R316].  This objective evidence provides substantial evidence for the

47

ALJ to conclude that Dr. Crocker's objective findings were not in proportion with his limitation on lifting for a significant period of time.

The Court finds, however, that substantial evidence does not support the ALJ's conclusion that the objective medical evidence contradicted Dr. Crocker's opinion that Plaintiff could not bend for a significant period of time. The Commissioner appears to argue that the otherwise unremarkable physical examination by Dr. Crocker provided substantial evidence for the ALJ's conclusion. The Commissioner identifies the following unremarkable evidence: (1) normal respiratory patter and clear lungs; (2) the lack of cyanosis, clubbing, edema, varicosities, or ulcerations in the extremities; (3) the lack of warmth, swelling, tenderness, and scarring of joints; (4) the absence of muscle spasms, scarring, or swelling in the back; (5) the negative Phalen's and Tinel's signs; (6) the slow but normal gait and lack of need for an assistive device; (7) Plaintiff's 5/5 strength throughout; (8) intact cranial nerve; (9) no sensory deficits or tremors; (10) normal reflexes; (11) negative straight leg raising and Romberg's testing[23]; (12) x-rays showing only mild to moderate degenerative osteoarthritis of the lumbar spine; and (13) a negative x-ray concerning the hip. [Doc. 16 at 23-24].

---

[23]     Romberg's test is a diagnostic test to determine whether there are diseases of the nervous system whereby an individual's feet are placed close together and her eyes are closed.

The only evidence from this list that seems to support the ALJ's decision to reject Dr. Crocker's bending opinion is the negative straight leg raising and the lack of muscle spasms or swelling in the back.  This evidence is merely a scintilla evidence.

No reasonable person would accept the above evidence as an adequate basis for rejecting Dr. Crocker's opinion concerning Plaintiff's bending limitations given the following objective evidence: Plaintiff had mild to moderate osteoarthritis; Plaintiff had tenderness in the L5 region; and Plaintiff had limited ROM in her back, including for back flexion and right and left lateral bending.  [R312-14].  Notably, Plaintiff's ROM in her back was limited by 1/3 to 2/3 of the normal ROM.  [R314].  Based on these objective findings, the Court finds that substantial evidence does not support the ALJ's decision concerning Dr. Crocker's assessment of Plaintiff's inability to bend for significant periods of time.

At oral argument, the Commissioner argued that this error was harmless because the light work RFC only entails occasional stooping, *i.e.*, very little to one third. Thus, the Commissioner argues that Dr. Crocker's bending limitation fits with the ALJ's finding that Plaintiff could perform light work.

The Court is not persuaded.  Under the Commissioner's Social Security Rulings, a finding of light work means, *inter alia*, that an individual can frequently lift or carry

49

objects weighing up to 10 pounds.  This ability implies that a person is able to do occasional bending of the stooping type, "i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist." SSR 83-14.  Thus, the ability to perform light work implies that an individual is able to occasionally stoop.  *See id.*  A finding that a claimant can frequently lift 10 pounds does not mandate a finding that a claimant can occasionally bend.

The Court is unsure how the ALJ would interpret Dr. Crocker's opinion that Plaintiff "would be expected to have problems . . . bending . . . for any significant period or of any significant magnitude." [R313].  It is not clear that this finding equates with a finding that Plaintiff could perform occasional bending, *i.e.*, bending "from very little up to one-third of the time."  *See* SSR 85-15.  Dr. Crocker's opinion about Plaintiff having problems with bending "for any significant period or of any significant magnitude" might suggest that Plaintiff could not bend for up to one-third of the time, thereby precluding Plaintiff from engaging in even occasional lifting.  As a result, the Court **REVERSES AND REMANDS** for the Commissioner to consider whether Dr. Crocker's opinion supports a finding that Plaintiff can perform occasional bending.

Plaintiff also argues that it was improper for the ALJ to give more weight to the non-examining state consultants. [Doc. 15 at 31-32].  Because the Court concludes that

50

the ALJ erred in not giving weight to Dr. Crocker's bending finding, the Court likewise concludes that it was error to give more weight to the nonexamining doctors based on their findings concerning bending. There were two state consulting doctors who performed physical RFC assessments after Dr. Crocker's examination - - Dr. Manlapas and Dr. Wilson. They both concluded that Plaintiff could occasionally crouch and crawl, but frequently could stoop and kneel. [R304, 350].[24] As discussed above, Dr. Crocker's own objective findings support his bending limitation, which the state agency doctors clearly did not follow. Also, the Court notes that the medical record also supports Dr. Crocker's bending limitation in that Plaintiff was diagnosed with degenerative disc disease, had limited ROM, and sought treatment for her lower back pain at various times after April 2002. [R408, 11-12, 15, 418-19, 422-23]. As a result, the Court finds that it was error for the ALJ to give more weight to the nonexamining doctors' opinions concerning bending where the objective medical evidence from

---

[24]     According to the Commissioner's Social Security Rulings, stooping, kneeling, crouching, and crawling are "progressively more strenuous forms of bending parts of the body." Stooping involves bending the body downward and forward by bending the spine at the waist. Crouching involves bending the body downward by bending both the legs and the spine. Kneeling is the bending of the knees to come to rest on one or both knees. SSR 85-15. Thus, the opinions of Dr. Manlapas and Dr. Wilson concerning stooping and crouching involved opinions about bending.

51

Dr. Crocker's exam and other medical record supported Dr. Crocker's opinion concerning the bending limitation.  *See Edwards*, 937 F.2d at 584; SSR 96-6p.

The Court concludes, however, that the ALJ did not err in giving greater weight to the state consultants' opinions concerning walking, standing, and lifting. Dr. Manlapas and Dr. Wilson both concluded that Plaintiff could: (1) occasionally lift 20 pounds; (2) frequently lift 10 pounds; and (3) stand and/or walk for 6 hours in an 8-hour day.  [R303, 349].  As stated above, the ALJ had cause for giving greater weight to these opinions because substantial evidence supported the ALJ's conclusion that Dr. Crocker's limitations were not supported by the objective medical evidence in Dr. Crocker's report.  Under these circumstances, the Court cannot conclude that it was error for the ALJ to give more weight to the non-examining doctors.

Accordingly, the Court **REVERSES** the ALJ's decision to give less weight to Dr. Crocker's opinion concerning bending.

### D.    *Residual Functional Capacity Determination*

Plaintiff argues that the ALJ erred in formulating the RFC by failing to consider the combination of all of Plaintiff's impairments.  [Doc. 15 at 33-37].  Plaintiff specifically contends that the ALJ should have found limitations in light of Plaintiff's depression given that Plaintiff was taking depression medication and found to have

AO 72A
(Rev.8/8
2)

suffered from depression by other examining and non-examining doctors.  [*Id.* at 34-36].  Plaintiff also asserts that the ALJ should have found other non-exertional physical limitations given Plaintiff's testimony about her pain, her use of a walking stick, and her problems with sitting and standing.  [*Id.* at 36-37].

The Commissioner responds that substantial evidence supports the ALJ's RFC determination.  [Doc. 16 at 26-28].  First, the Commissioner notes that the ALJ did not need to provide mental limitations in the RFC because Plaintiff failed to prove that she had a severe mental impairment that interfered with her ability to work.  [*Id.* at 26-27].  Second, the Commissioner contends that Plaintiff failed to prove additional physical limitations and instead cited to her own testimony concerning her need for a cane and her problems with sitting and standing.  [*Id.* at 28].

The RFC "assessment is made prior to, and used in, steps four and five of the five-part evaluation under 20 C.F.R. § [416.920]."  *Tauber*, 438 F. Supp. 2d at 1374.  The RFC is the most sustained work activity that a claimant can perform in an ordinary work setting on a regular and continuing basis despite his physical and mental limitations.  20 C.F.R. § 416.945(a); SSR 96-8p.  To evaluate the RFC, the ALJ must consider all of Plaintiff's impairments in combination.  *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986); *see also* 20 C.F.R. § 416.945(a)(2) (indicating that the ALJ

AO 72A
(Rev.8/8
2)

"will consider all of [claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'"); SSR 96-8p (indicating that the RFC is based on "all of the relevant evidence in the case record"). In making the RFC assessment, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p. The RFC involves both exertional and nonexertional limitations.[25] *Id.*

The Court concludes that in light of its determination that the ALJ erred in rejecting Dr. Crocker's bending limitation, the ALJ should re-evaluate the RFC determination. Specifically, the ALJ should determine whether Plaintiff's inability to bend "for any significant period or of any significant magnitude" is consistent with a RFC finding that Plaintiff could occasionally bend and stoop.

---

[25] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." In contrast, "[n]onexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength . . . . It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)." Also, the nonexertional capacity considers "the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." SSR 96-8p.

54

The Court also concludes that ALJ should re-evaluate whether the RFC assessment should contain a sit/stand limitation. "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p. The Court recognizes that the nonexamining doctors determined that Plaintiff was capable of sitting or standing for six hours in an eight hour day. [R304, 349]. The Court also recognizes that substantial evidence supported the ALJ's decision to reject Dr. Crocker's standing limitation. However, the Court also has found that the ALJ must re-evaluate whether Plaintiff's hip impairment is not severe. As a result, the Court finds that the better course is to have the ALJ determine whether a sit/stand limitation is necessary in the RFC after re-evaluating whether the hip impairment is severe at step two. Because the ALJ must re-consider whether the hip impairment and Dr. Crocker's bending limitation affects the RFC assessment, the Court finds that the ALJ should re-determine whether Plaintiff's pain affects the RFC assessment given that pain might relate to these impairments. Accordingly, the Court **REVERSES AND REMANDS** for the ALJ to re-evaluate the RFC assessment to determine whether Dr. Crocker's bending limitation or Plaintiff's pain or hip impairment affects the RFC determination.

AO 72A
(Rev.8/8
2)

The Court concludes, however, that the ALJ did not err in evaluating whether Plaintiff's use of a walking stick constituted a nonexertional impairment, thereby affecting the RFC assessment. The Eleventh Circuit recognizes that the inability to walk without an assistive device constitutes a non-exertional impairment. *See Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987). To find that a hand-held assistive device is medically required, the medical record must document the need for such a device to aid walking or standing. SSR 96-9p. The medical record is devoid of any evidence that Plaintiff needed an assistive device to walk. Instead, the only evidence relevant to Plaintiff's walking ability indicated that although Plaintiff walked slowly, her gait was normal and she walked without an assistive device. [R312]. As a result, the Court finds that the substantial evidence supports the ALJ's decision not to consider the assistive device in making the RFC assessment. Accordingly, the ALJ's did not err in omitting consideration of the assistive walking device in formulating the RFC.

The Court also concludes that substantial evidence supports the ALJ's decision not to include mental limitations in the RFC stemming from depression. There is no medical evidence in the relevant record that Plaintiff suffered from depression. Dr. Bowling, the only examining psychologist associated with Plaintiff's September 2002 SSI application, merely found that Plaintiff suffered from alcohol and cocaine

dependence in remission.  [R319].  Otherwise, he determined that Plaintiff had good concentration, clear and organized speech, good ability to comprehend and respond to questions, the ability to understand and carry out instructions, and the ability to sustain attention to complete tasks.  [R318-19].  Substantial evidence therefore supports the ALJ decision to omit nonexertional limitations stemming from Plaintiff's depression in the RFC assessment.  Accordingly, the Court finds that the ALJ's RFC assessment insofar as it reflects no limitations associated with depression is supported by substantial evidence.

### E.     Past Relevant Work

Plaintiff argues that her past work does not demonstrate that she engaged in past relevant work because she did not hold the positions for a sufficiently long duration and the positions did not constitute substantial gainful activity.  [Doc. 15 at 10-13]. Plaintiff also argues that the ALJ failed to develop the record and fully explain Plaintiff's past work as a housekeeper as required by Social Security Ruling 82-62 and Eleventh Circuit law.  [*Id.* at 13-17].  Plaintiff finally argues that the ALJ erred in concluding that she could perform her past relevant work because: (1) the ALJ relied on the wrong DOT classification; and (2) the ALJ erred in making the RFC determination.  [*Id.* at 18-21].

57

The Commissioner responds that the ALJ did not err in evaluating whether Plaintiff could perform past relevant work as a housekeeper.  [Doc. 16 at 29-36]. The Commissioner first contends that Plaintiff failed to meet her burden of establishing that her work experience did not constitute past relevant work.  [*Id.* at 29-30]. The Commissioner next argues that Plaintiff's past work did not constitute an unsuccessful work attempt, and she instead provided sufficient information for the ALJ to find that her past work was recent, of sufficient duration, and substantial gainful activity.  [*Id.* at 30-32].  The Commissioner then argues that the ALJ did not have to inquire more fully into the specific demands of Plaintiff's past work because the ALJ was allowed to rely on the DOT description of a housekeeper.  [Doc. 16 at 33, 34-35]. The Commissioner asserts that the ALJ relied on the correct DOT section because a past relevant work determination only requires that the person be able to perform the kind of work that was performed in the past.  [Doc. 16 at 34].

A claimant has the burden of showing that certain work experience is not past relevant work.  *Barnes*, 932 F.2d at 1359.  Past relevant work is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1).  Thus, past relevant work exists when three conditions are met: (1) the work was recent, *i.e.*, it

58

occurred within 15 years; (2) the work was of sufficient duration, *i.e.*, the claimant had enough time to learn the skills needed for average performance in the job; and (3) the work constituted substantial gainful activity. SSR 82-62; *see also* 20 C.F.R. § 416.960(b)(1). Work is substantial gainful activity if the claimant can hold the job for "a significant period of time." *Gaitliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 693-94 (9th Cir. 1999) (citing cases from the Third, Fourth, Sixth, Tenth, and D.C. circuits); *see also Wallace v. Barnhart*, 256 F. Supp. 2d 1360, 1376-77 (S.D. Fla. 2003) ("[S]ubstantial gainful activity not only means the ability to locate and physically perform a job, but also the ability to maintain the job for a significant period of time. . . . Thus, substantial gainful activity does not include 'rotating' through jobs.") (citation and footnote omitted). Courts have not defined the phrase "significant period of time" precisely, *Wallace*, 256 F. Supp. 2d at 1377 n.8, but the Ninth Circuit has held that an individual must be able to hold the position for longer than 2 months, *Gaitliff*, 172 F.2d at 694.

"Any case requiring consideration of [past relevant work] will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work)." SSR 82-62. A claimant's statements about her past relevant work "are generally sufficient for determining the skill level, exertional

59

demands and nonexertional demands of such work."  Adequate documentation of past work is to be obtained from the claimant, employer or other source and includes: (1) factual information about work demands that affect a claimant's medically established limitations; (2) detailed information about the past work requirements, including strength, endurance, manipulative, and mental demands; and (3) information about job titles, dates of previously performed work, compensation rate, the knowledge required, the extent of supervision, and the description of tasks and tools used. *See* SSR 82-62.

The Court concludes that the record was not sufficiently developed for the ALJ to determine whether Plaintiff's past work constituted substantial gainful activity. The Court agrees with Plaintiff that inconsistencies in the record required the ALJ to inquire further about Plaintiff's past jobs to determine whether they were of sufficient duration.  [*See* Doc. 15 at 13].  The September 2002 work history shows that Plaintiff reported that she worked: (1) as a salad prep from "1999" to "1999"; (2) as a cleaner at the Civic Center from "1998" to "1999"; and (3) as a cleaner at a mall from "1999" to "2000."  [R265].  In the October 2002 work history, Plaintiff reported that she worked: (1) as a cleaner from "8-98" to "-99"; (2) as a salad prep from "9" to "99"; and (3) as a cleaner from "3" to "99."  [R264].  Finally, at the administrative hearing,

60

Plaintiff testified that: (1) she last worked in 1999 as a cleaner at the Civic Center; (2) she worked as a food preparer; and (3) she worked as a house and apartment cleaner.  [R434-35].

The Court cannot determine when Plaintiff worked her prior jobs or for what duration she worked these jobs.  The Social Security Ruling requires the record to contain "detailed information" including the "dates work was performed."  SSR 82-62.  Plaintiff did not provide detailed information about the dates that she performed her work, but instead provided confusing information.  The Commissioner did not seek to clarify Plaintiff's reported information.  Without clear and detailed information, this Court cannot determine whether substantial evidence supports a finding that Plaintiff held jobs for a significant period of time for it to constitute substantial gainful activity.  *See, e.g.*, *Gaitliff*, 172 F.2d at 694; *Wallace*, 256 F. Supp. 2d at 1376-77.  Thus, the ALJ failed to develop the record with adequate information, as required by SSR 82-62, to determine whether Plaintiff's past work constituted past relevant work.

Because the Court finds that the ALJ erred in developing the record to determine whether Plaintiff engaged in past relevant work, the Court likewise finds that the ALJ erred in determining that Plaintiff could perform her past relevant work.  Accordingly, the Court **REVERSES AND REMANDS** for the ALJ to: (1) sufficiently develop the

61

record concerning Plaintiff's past work;[26] (2) determine whether Plaintiff's past work

history constituted past relevant work; and (3) determine whether Plaintiff had the RFC

to engage in past relevant work.  Since the ALJ erred in gathering sufficient evidence

to determine whether Plaintiff performed past relevant work, the Court will not discuss

Plaintiff's other arguments concerning past relevant work, namely that the ALJ erred

in: failing to make explicit findings about her past relevant work; identifying the correct

DOT classification to describe her past relevant work as it was performed in the

national economy;[27] failing to find that the past jobs were unsuccessful work attempts;

---

[26]     On remand, the ALJ may want to clarify inconsistencies in Plaintiff's
September 2002 and October 2002 reports of her work history.  In the September 2002
work history, Plaintiff indicated that she used machines, tools, or equipment, stood for
2 or 3 hours, crouched once or twice, and frequently lifted 25 pounds.  [R248].  On the
other hand, Plaintiff stated in her October 2002 description of the Civic Center job that
she did not use machines, tools, or equipment, stood for one hour, crouched for 10 to
20 minutes, and frequently lifted 15 pounds and other.  [R265].  *See Lohse v. Shalala*,
No. 06-1694, 1994 WL 263699, at * 4, 28 F.3d 113 (10th Cir. June 16, 1994) (Table)
(finding that ALJ did not develop record concerning the requirements of claimant's past
relevant work where there were inconsistencies in claimant's disability report including
statement that the job did not require much standing while also reporting that the job
required zero standing).

[27]     The Court notes that the ALJ may discharge his duty of making explicit
findings about the actual physical and mental demands of the claimant's past work "by
referring to the specific job descriptions in the [DOT] that are associated with the
claimant's past work."  *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999); *Kirkendoll
v. Apfel*, No. 97-1147, 162 F.3d 1155 (Table), 1998 WL 539481, at * 1 (4th Cir. Aug.
25, 1998) ("Although specific reference to individual job demands is required to

and finding that Plaintiff could return to her past work as it was performed in the national economy.

### F.    Vocational Expert

Plaintiff argues that the ALJ erred in not having a VE available because the VE would have properly assessed how Plaintiff's past work should have been characterized.  [Doc. 15 at 22].  Plaintiff also states that the VE could have testified about the job requirements of a housekeeper in relation to Plaintiff's limitations.  Plaintiff finally argues that VE testimony would have been helpful to determine whether Plaintiff's past work met the durational requirements.  [*Id.* at 23].  The Commissioner responds that the ALJ did not need to consult a VE because he determined that Plaintiff could perform her past relevant work.  [*Id.* at 35].

At step 4 of the sequential process, an ALJ may use a VE to determine whether "the claimant can perform his past relevant work."    *See Davis v. Barnhart*,

---

determine whether the claimant can return to his actual past job, when the ALJ analyzes past relevant work as it is performed in the national economy, she is entitled to rely on the exertional categories found in the DOT."); *see also* 20 C.F.R. § 416.960(b)(2); SSR 82-61 (noting that the DOT can be used for defining past work as it is usually performed in the national economy).  However, when the ALJ relies on the DOT to determine how the job is performed in the national economy, the "ALJ must develop the record concerning the requirements of the claimant's past relevant work sufficiently to ascertain what job listing in the [DOT] matches the claimant's past relevant work." *Lohse*, 1994 WL 263699, at * 3.

377 F. Supp. 2d 1160, 1161-62 (N.D. Ala. 2005).  However, an ALJ does not need VE testimony to determine that a claimant can perform his past relevant work.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) ("[B]ecause the ALJ concluded that [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary.").   Since the ALJ made the disability determination at step four of the evaluation process, the ALJ did not need to have the VE testify at step four.  Accordingly, the Court finds that the ALJ's decision not to have the VE testify for the step four determination was not error.

## VIII. CONCLUSION

Pursuant to this Court's power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405 (g),[28] the Court hereby **REVERSES** the Commissioner's denial of disability benefits **AND REMANDS** for the Commissioner to: (1) determine whether Plaintiff's hip impairment is a severe impairment at step two; (2) re-evaluate Dr. Crocker's bending limitation; (3) re-evaluate Plaintiff's RFC;

---

[28]      "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

64

(4) develop sufficiently the record concerning Plaintiff's past work; (5) determine whether Plaintiff's past work history constituted past relevant work; and (6) determine whether Plaintiff's RFC allowed her to engage in past relevant work.  The Court also **GRANTS** the Commissioner's motions to exceed the page limit, [Doc. 16-2], and to supplement authority, [Doc. 20].

The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IT IS SO ORDERED AND DIRECTED** this the 8th day of August, 2007.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)